## ADA MADDOX *v.* H. M. GOSSOM.

**Guardian and Ward—Costs of Court.**

In a suit by a guardian, to confirm a report previously made, he will not be entitled to his costs, where it is shown that his county court settlement was condemned, by the court from which the appeal is prosecuted

**Same—Attorney Fee.**

Nor will an allowance for an attorney fee to the guardian, be sustained.

**Guardian and Ward—Allowance for Maintenance.**

Where, by a will, the principal of a trust fund is not to be used, the guardian, who had the use of the wards money for two years without interest, cannot complain of a shortage for said period of expenses for board, etc.

APPEAL FROM TRIMBLE CIRCUIT COURT.

February 21, 1870.

OPINION OF THE COURT BY JUDGE PETERS:

In July, 1853, Richard Maddox, of Trimble county, made, and published his will in which he bequeathed to his daughter, Adarena Maddox, then of tender years, twenty-three hundred dollars, and appointed appellee her testamentary guardian, directing in the same sentence, in which the appointment is made, "that the interest of her money *only* be used to educate her, and to furnish other necessaries of life."

He was also nominated as executor in the will, both of these trusts he understood.

In September, 1865, he made a settlement of his accounts with the judge of Trimble county court as guardian, which showed that he had money of his ward in his hands, amounting to $1072.13.

And in January, 1866, he made a second settlement with the same judge by which it appeared that he had in his hands funds of his ward amounting to $1462.75.   These settlements were filed and no exceptions having been taken thereto were confirmed, and ordered to record by the court.

In April, 1866, this suit in equity was brought by appellee, against his ward, in which he alleges that she was then about 14 years of age, that the interest and profits on her estate were wholly inadequate to defray the expense of boarding, clothing and educating her, and to melt the current expenses incurred therefor, he had been compelled to expend annually a part of the principal of her legacy, whereby, as he alleges, it had then been reduced to $1462.75, which, according to his judgment, and belief was proper, and best for his ward that it should be done, and he did it at her earnest and importunate request, and that she then still continued to importune him to expend more of the principal in that way—He then concludes with a prayer that the settlement of this account, approved and confirmed by the county court, may be sanctioned and confirmed by the chancellor, and that he might be authorized, and directed by the court to expend annually such parts of the principal as remained in his hands to the purposes of the maintenance, and support of his ward as the court should deem just and proper.

The expenditure of any part of the principal, or of even all the annual income and profits of the ward's estate was denied in the answer of the guardian *ad litem,* the settlements with the county judge attacked, and surcharged, and their correctness controverted, and the failure of the guardian to produce vouchers for credits claimed, and allowed him urged in condemnation of said settlements, and it was furthermore alleged that appellee had received money of his ward in way of rents, which he had not charged himself with, nor accounted for in his settlements.

The case was referred to the master to state and settle the accounts of the guardian, inquire as to any rents he migt have received, and report the result of his investigations to court.

The master reported that appellee qualified as executor of the testator on the 13th of September, 1853, and should not be charged

with interest on funds in his hands till 13th of September, 1860. That his settlement as executor of 18th of December, 1864, showed the sum of $1519.78 was then in his hands, of this sum $681.75 was received for rents from 1859 to 1863 inclusive, on which interest should be charged from the date of receipts. He adopted the amounts. allowed in the county court settlements for boarding and schooling as reasonable—considered her services in the family of appellee, from the evidence, worth her board for the four years preceding the settlement, except when she was going to school which time he fixed at 18 months as shown by evidence of I. Manfield, who had a diary kept by some of her teachers which was filed. Charged interest on said sum before stated to be in his hands from the 13th of September, 1860 to 1862, with interest on the amount of the rents from the times they were received, making the interest account $155.28, and crediting him by boarding, clothing, and tuition, in all $307.80, making the expenditure exceed the profits or income for the two years credits for schooling, clothing, physician's bill, and nursing and attention while his ward was sick reported a balance in his hands of $2171.31, with interest from the 22nd of May, 1867, and reported that he had received of rents $193.35 more than he had accounted for; had sold timber from land, or used it of the value of $10; rented the berries one year for $6, and used them two years himself, which, estimating them at the price for which he sold the berries the year before would leave him indebted to the estate in the further sum of $221.35.

Both parties excepted to the master's report, all of which on final hearing were overruled as the judge expresses it in his opinion, and the report confirmed, except so far as it is inconsistent with his judgment then rendered. In which he adjudged to the ward the sum of $1900 as of the 22nd of May, 1867, being $21.31 less than the amount reported by the master as due her; which amount he finds due, after making an allowance to the guardian, and directs credits for $175 which was paid as the judgment expresses on the 23rd of May, 1867, and $150 paid the 21st May, 1868; it is further stated by the judge that he is of opinion that there had been no default on the part of the guardian, and he was therefore authorized to pay the costs of the action out of the ward's money in his hands, including a fee to his

attorney of $50; a like sum is ordered to be paid to the attorneys of the ward, and $75 to the master for his services.

From which judgment the ward has appealed, and the guardian prosecutes a cross appeal.

Appellee brought this suit as has been heretofore shown from his allegations in his petition to obtain a judgment confirming his two county court settlements, by the one most favorable to his ward he is reported to owe her on January, 1866, only $1462.75, when by the report of the master in chancery he was in May, 1867, in her debt $2171.31 making a difference of over $700, besides $221.35 for rents in his hands unacounted for, and even if the judgment could be approved this most favorable county court settlement falls short nearly $500 of the true amount in his hands, and for which he should be accountable to say nothing of the $221.35 for rents, etc.

Whether strict dealing would not throw the burden of boarding and clothing the ward on the guardian for the two years he had the larger portion of her funds in his hands, and for which time he was charged no interest, as he entered upon the trust with a full knowledge of the true condition of the estate, being the executor, and knowing as he did that the will required of the guardian that the principal of the ward's estate was not to be touched for her supoprt and education is a question which might be discussed in its moral and equitable aspect both, if time would permit; but its consideration may now be waived, and the propriety of the judgment will be considered— The reason for reducing the sum below that reported by the master, it not explicitly stated, but it is to be inferred from the language that the difference is produced by an allowance to the guardian for his services.

The weight of evidence conduces to the conclusion that for the period allowed by the comissioner that the services of the ward, sprightly, industrious and amiable as she is shown to be would have been worth even more than her board, and the failure of appellee, to produce vouchers for his expenditures for clothing and tuition fees, does not recommend the manner he has discharged his duty to the especial favor of the chancellor— And the excuse he attempts to make out for his failure, that it was too difficult to get and keep vouchers, deceives the author more than it does those whose duty it is to review his conduct.

The procuring vouchers, and keeping an acount of his ward

would have been attended with less trouble than to produce witnesses before the master to prove the probable cost of clothing and schooling girls of her age and means, and testing it by the *opinions* of parents in the neighborhood of what their daughters cost them, a test wholly uncertain and unsatisfactory—and the trouble of making such proof greater than the more infallible test of producing, unless the greater part of the witnesses consisted of the family—and family connections.

By the terms of the will the daughter of testator was to have her legacy immediately and if a part of it was to be raised by a sale of his land, the rents thereof should be taken to make up the interest on the deficit until it was sold—and to that extent she would be entitled to the rents—the portion of which in his hands may be applied to pay him for his extra labor, which seems not to have been disposed of by the judgment— Besides the use of over $1500 for two years for which he was charged no interest is an additional reason why the court below should not have diminished the amount, and given judgment for less than the master reported; the principal having by that report been reduced over $100.

Nor do we concur with the court below in making the ward pay the cost of the suit including the attorney's fee of appellee. The object of the suit was to sanction what had been illegally done, and to procure indulgence for future unnecessary expenditures, and the relief sought in neither aspect was granted, but the county court settlement, even by the judgment of the court below, condemned.

The rule of law, therefore, to make the successful party pay the cost of the litigation can not be changed because the successful party is an infant and the ward of her adversary. The judgment must therefore be *reversed* on the original appeal and the cause remanded with directions for a judgment to be rendered in favor of appllant for the amount reported to be due to her by her former guardian being $2171.31, with interest from 22nd May, 1867, subject to such payments as he may show he has paid to the present guardian under orders of court, or without such orders if he has paid any—and he must pay the cost of this suit in the court below except the fee to the master, as that was cost incident to his relation of guardian he should pay it out of the fund in his hands and be credited by the amount—and as the evidence shows

the services rendered by the attorneys for the ward were worth $100, they should be allowed that sum and the judgment is *affirmed* on the cross appeal and appellee must pay the costs in this court.

*Pryor & Barbour,* for appellant.

*Winslow, Rodman,* for appellee.